FILED

MAR 07 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NV-13-1205-KiTaJu |
| WILLIAM WALTER PLISE, | Bk. No.   2:12-bk-14724-LBR |
| Debtor. | |
| MITCHELL D. STIPP, | |
| Appellant, | |
| v. | **O P I N I O N** |
| CML-NV ONE, LLC; SHELLEY D. KROHN, Chapter 7 Trustee, | |
| Appellees. | |

Argued and Submitted on January 24, 2014,
at Las Vegas, Nevada

Filed - March 7, 2014

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Linda B. Riegle, Bankruptcy Judge, Presiding

Appearances:     Nathan Andrew Schultz, Esq. of Greenberg Traurig, LLP argued for appellant, Mitchell D. Stipp; Matthew Kneeland, Esq. of Sylvester & Polednak, Ltd. argued for appellee, CML-NV One, LLC.

Before:   KIRSCHER, TAYLOR and JURY, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

Appellant Mitchell D. Stipp ("Stipp") appeals an order sanctioning him $10,000 for his noncompliance with the subpoenas of appellee CML-NV One, LLC ("CML"), a creditor of chapter 7[1] debtor William Walter Plise ("Debtor").[2]  Because the bankruptcy court applied an incorrect standard of law to a nonparty — applying Civil Rule 37 when it should have applied Civil Rule 45 — we REVERSE.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Events leading to Stipp's motion for protective order and CML's countermotion to compel**

Debtor owned and operated several commercial real estate development companies in Nevada.  He filed an individual chapter 7 bankruptcy case on April 23, 2012.  CML is the successor-in-interest to Silver State Bank.

Stipp served as Debtor's special litigation counsel and as general counsel for Aquila Management, LLC, one of Debtor's companies, which served as the manager of most (if not all) of the entities previously owned by Debtor.  Stipp also, either

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[2] The order on appeal actually did three things.  It denied Stipp's motion for protective order, granted CML's countermotion to compel, and sanctioned Stipp $10,000 for his noncompliance with CML's subpoenas.  Pursuant to an order entered on September 19, 2013, the only issue before this Panel is whether the bankruptcy court abused its discretion in sanctioning Stipp for noncompliance with the subpoenas.

-2-

individually or through MSJM Advisors, LLC ("MSJM"), a company in which Stipp held an interest, provided services to and/or managed, owned or controlled various entities also controlled by Debtor and/or his affiliate entities. Stipp also is the former COO and general counsel for other entities once owned and operated by Debtor.

On September 12, 2012, CML moved for a Rule 2004 examination of Stipp individually and as the person most knowledgeable of MSJM. At that time, CML was represented by the law firm Lionel Sawyer & Collins ("LS&C"). The Clerk issued orders granting both motions.

Pursuant to Civil Rule 45,[3] CML served Stipp and MSJM with subpoenas to appear at Rule 2004 examinations and to produce documents. Stipp retained Quarles & Brady LLP ("Quarles & Brady") to represent him.

In compliance with Civil Rule 45(c)(2)(B), Quarles & Brady prepared written objections to the subpoenas on behalf of Stipp and MSJM ("Written Objections") and timely served them on LS&C on October 5, 2012.

CML agreed to continue the Rule 2004 examinations indefinitely to resolve Stipp's Written Objections. LS&C then filed two notices continuing the Rule 2004 examinations to a date and time to be subsequently noticed.

On November 19, 2012, LS&C informed Quarles & Brady that it was withdrawing from representing CML due to a conflict. LS&C told Quarles & Brady to "stand down" and wait for further

---

[3] All references to Civil Rule 45 are to the version prior to the amendments in December 2013.

instruction from substitute counsel. At that time, the parties had not yet engaged in any substantive discussions to resolve the Written Objections. Thereafter, CML retained Snell & Wilmer as substitute counsel. Snell & Wilmer never contacted Quarles & Brady regarding the Stipp matter.

On December 12, 2012, attorney Matthew Kneeland ("Kneeland") of the law firm Sylvester & Polednak, Ltd. contacted Quarles & Brady to inquire about the status of Stipp's document production for CML. Specifically, Kneeland sought to obtain the documents he understood Quarles & Brady had already prepared for production.

Quarles & Brady promptly responded that it was confused by Kneeland's email because Snell & Wilmer had appeared as new counsel for CML. In response, Kneeland filed a notice of appearance on behalf of CML and expressed his concern to Quarles & Brady that Stipp had not yet produced any documents, despite the issuance of the subpoena duces tecum in September.

On December 14, 2012, Quarles & Brady informed Kneeland that it was forced to withdraw as counsel for Stipp due to a conflict.

Immediately thereafter Stipp, now pro se, began corresponding with Kneeland to discuss the document production matter. Stipp noted his Written Objections to the subpoenas and explained that no substantive discussions ever took place between Quarles & Brady and LS&C to resolve them. Stipp also explained the complications involved in complying with CML's document request due to his former role as Debtor's attorney. Stipp's young son also had been recently diagnosed with a significant medical condition, which was consuming a great deal of his time. However, Stipp expressed to Kneeland his intention of complying with the subpoenas and stated

-4-

that he was confident the parties could amicably resolve the matter without resorting to costly litigation.

Ultimately, Stipp requested an extension until January 14, 2013, to retain new counsel for purposes of completing the production process started by Quarles & Brady. Kneeland eventually agreed to the January 14 extention for Stipp to hire new counsel, but told Stipp that CML would file a motion to compel and/or for a contempt order if he failed to produce all documents responsive to the subpoenas by that date. In a January 7, 2013 email to Kneeland, Stipp asked that CML refrain from taking any action on the subpoenas and suggested that the parties meet within two weeks after January 14, 2013, assuming he had obtained new counsel by then. Kneeland did not respond to Stipp's January 7 email.

As promised, Stipp hired new counsel and sent an email to Kneeland on January 14, 2013, informing him that he was now represented by Bogatz & Associates. Stipp again expressed his desire to comply with the subpoenas in a timely manner. Later that same day, attorney Scott Bogatz ("Bogatz") sent an email to Kneeland requesting that all Stipp communications be directed to his firm. Kneeland replied that no documents had been produced by the January 14 deadline. He further contended that none of Stipp's Written Objections would hold up in court. Kneeland demanded production of all documents responsive to the subpoenas as a "precondition" for CML not filing a motion to compel. Bogatz responded, explaining that his firm was reviewing the history of the discovery issues and noting that they appeared more complex than Kneeland had implied. Counsel for the parties engaged in

-5-

several phone conferences in late January 2013.

On February 1, 2013, Kneeland's co-counsel, attorney Jeff Sylvester ("Sylvester"), sent Bogatz an email stating that he understood Stipp's intention, with some exceptions, to stand by his Written Objections. The "exceptions" related to documents that had been withheld under a claim of attorney-client privilege. Sylvester asked that the privileged documents be identified so he could obtain a waiver from the chapter 7 trustee to facilitate their production. Sylvester also notified Bogatz that his firm intended to file a motion to compel within the week.

On February 4, 2013, Bogatz replied to Sylvester's February 1 email, listing the documents responsive to the subpoena, that, subject to a resolution of attorney-client privilege and confidentiality issues, Stipp was willing to produce. Bogatz further informed Sylvester that because the parties could not reach an agreement on this process, Stipp was currently filing a motion for protective order.

**B. The competing motions**

**1. Stipp's motion for protective order**

In response to CML's threatened motion to compel, Stipp filed a motion for protective order ("MPO") on February 4, 2013, seeking to limit CML's scope of discovery and otherwise protect what he asserted was confidential and privileged information. Stipp argued that the subpoenas requested information that was largely unrelated to the administration of Debtor's bankruptcy case, intruded into Stipp's personal and confidential affairs and amounted to nothing more than an abuse of process designed to burden, annoy and harass him. Stipp projected that complying with

-6-

the subpoenas to produce would take months and cost thousands, if not hundreds of thousands, of additional dollars. Stipp claimed that, to date, he already had incurred more than $100,000 in attorney's fees and costs regarding the subpoenas.

**2. CML's countermotion to compel**

On February 25, 2013, three weeks after Stipp filed his MPO and about two weeks before the motion's scheduled hearing, CML filed its opposition and countermotion to compel, also to be heard on March 13, 2013 ("Countermotion to Compel"). CML's opposition and separately-filed Countermotion to Compel were identical and requested the same relief.

CML contended that Stipp's MPO failed either to account for his failure of producing a single document over the last five months or to explain his failure of producing the privilege log required by Civil Rules 45(d)(2) or 26(b)(5). CML contended that Stipp's Written Objections were meritless and improper and that the subpoenas did not exceed the broad scope allowed by Rule 2004. Accordingly, CML argued that Stipp's MPO had to be denied and that he must be compelled to produce documents and submit to the Rule 2004 examinations. In conclusion, CML requested attorney's fees incurred in bringing its Countermotion to Compel pursuant to Civil Rule 37(a)(5).

In his reply, Stipp argued that the information requested by CML went beyond the admittedly broad scope of Rule 2004, was protected by the attorney-client privilege and/or work product doctrine or was subject to Stipp's other constitutional rights and privileges. Stipp merely sought to "place reasonable parameters on the breadth of discovery being requested by a creditor upon a

-7-

non-debtor." Stipp also argued that he was not evading discovery; he had complied with Civil Rule 45 by timely serving his Written Objections. Any delays in production, argued Stipp, had been caused by CML's multiple substitutions of counsel, by its unreasonable requests, by its inflexible demands and by its unnecessary criticism of Stipp's compliance.

### 3. The parties' attempts to resolve the production dispute

The hearing on the MPO and Countermotion to Compel was continued to March 28, 2013, in hopes that the parties could resolve the matter without court intervention. After three meetings between counsel for CML, Stipp's criminal defense attorney Jeffrey Setness ("Setness"), Bogatz, and counsel for the chapter 7 trustee, Setness agreed, subject to Stipp's final approval, that Stipp and MSJM would withdraw nearly all of their prior objections and produce responsive documents in a timely manner. On March 19, 2013, Sylvester drafted two letters to Bogatz and Setness memorializing the parties' agreement to produce.

On March 20, 2013, Stipp sent a letter to counsel for CML stating that neither of his counsel represented MSJM and that he did not agree to the settlement terms. As a result, asserted Stipp, no agreement had been reached between him and CML regarding production of any documents. Nonetheless, Stipp agreed to produce by March 22, 2013, copies of nonprivileged documents he believed were responsive to the subpoenas. However, he still reserved all prior objections. As for the privileged documents, Stipp would deliver them to the parties he believed held the privilege so they could waive or assert their privileges and/or prepare a privilege

-8-

log.

Stipp did as promised. Counsel for CML timely received a CD containing 1,058 documents. Stipp also sent counsel for Debtor over 1,500 pages of documents that he believed might be privileged and requested that Debtor either prepare a privilege log, assert the privileges or waive them.

**4. CML's reply supporting its Countermotion to Compel**

CML complained that Stipp's "document dump" was in violation of Civil Rule 45, contending that the documents in his CD were in no particular order, making it impossible for CML to distinguish which documents were responsive to the requests, if any. CML further contended that Stipp had waived any asserted attorney-client or work product privilege due to his "blanket" privilege assertions and his failure to produce a log or any specific information to evaluate his objections. Lastly, CML argued that it was entitled to reasonable expenses incurred in bringing the Countermotion to Compel under Civil Rule 37(a)(5), because Stipp did not comply with the subpoenas until after CML's motion had been filed. CML requested $11,809 in attorney's fees it incurred due to Stipp's alleged unjustifiable failure to comply with the subpoenas.

**5. Ruling on the competing motions**

At the hearing on the MPO and Countermotion to Compel, the bankruptcy court did not expressly deny or grant either motion, but ordered the following: (1) MSJM had to produce all documents and Stipp had to identify those already produced; (2) rather than requiring Stipp to resubmit his documents by category, CML would ask Stipp to identify the documents at his ordered Rule 2004

examination; (3) if Stipp wanted to assert any attorney-client privilege, he needed to provide a privilege log by April 10, 2013; and (4) if there were any objections to the expected privilege log, another hearing would be held. The bankruptcy court also awarded attorney's fees of $10,000 for CML's efforts in bringing the Countermotion to Compel, reducing it from the $11,809 requested because Stipp had produced some documents.

The parties disapproved of each other's proposed orders on the competing motions and were ordered to file additional briefing. Not surprisingly, the parties disagreed about what was granted or denied at the hearing and/or to what extent. After reviewing the parties' responses, the bankruptcy court entered an order denying Stipp's MPO and granting CML's Countermotion to Compel ("Order"). Stipp paid the $10,000 sanction as ordered and timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). As to the portion of the Order awarding sanctions, the Order is sufficiently final for immediate appeal. Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 n.3 (9th Cir. 1983) (orders imposing sanctions on nonparties for failure to comply with discovery are considered final for purposes of appeal). Therefore, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion when it awarded CML its attorney's fees for Stipp's noncompliance with the subpoenas?

///

-10-

## IV. STANDARD OF REVIEW

The imposition of discovery sanctions is reviewed for abuse of discretion. <u>Freeman v. San Diego Ass'n of Realtors</u>, 322 F.3d 1133, 1156 (9th Cir. 2003). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion, first determining de novo whether the court identified the correct legal rule, and second examining the court's factual findings under the clearly erroneous standard. <u>Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC)</u>, 481 B.R. 51, 64 (9th Cir. BAP 2012) (citing <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc)).

## V. DISCUSSION

**The bankruptcy court abused its discretion by applying an incorrect legal rule in awarding sanctions.**

In its Countermotion to Compel and reply, CML requested sanctions for its attorney's fees under Civil Rule 37(a)(5),[4] incorporated by Rule 7037. The bankruptcy court did not specify either in the Order or in its oral ruling which authority it

---

[4] Civil Rule 37(a)(5) provides:

If the motion is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
    (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
    (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
    (iii) other circumstances make an award of expenses unjust.

-11-

applied for imposing sanctions. However, in reviewing the record, it appears to have applied Civil Rule 37. Moreover, the parties have argued exclusively about how the bankruptcy court properly or improperly applied Civil Rule 37 in this case.

Civil Rule 37 applies only to a party (or a deponent) in a contested matter or adversary proceeding. See Rule 9014 (Rule 7037 applies in contested matters); Rule 7037 (incorporating Civil Rule 37 into adversary proceedings); Nicole Energy Mktg., Inc. v. McClatchey (In re Nicole Energy Servs., Inc.), 356 B.R. 786 (6th Cir. BAP 2007) (unpublished table case); Pereira v. Felzenberg, 1997 WL 698186, at *5 (S.D.N.Y. Nov. 7, 1997); In re Consol. Meridian Funds, 2013 WL 1501636, at *10 n.14 (Bankr. W.D. Wash. Apr. 5, 2013) (Civil Rule 37 applies only in a contested matter or adversary proceeding, citing Rules 9014 and 7037); Riley v. Sciaba (In re Sciaba), 334 B.R. 524, 526 (Bankr. D. Mass. 2005); In re Sutera, 141 B.R. 539, 541 (Bankr. D. Conn. 1992) (Civil Rules 26-37, incorporated by Rules 7026-7037, apply only when contested matters or adversary proceedings have been commenced). Civil Rule 37 applies to motions to compel production only from a "party" under Civil Rule 34, incorporated by Rule 7034, which in turn provides that motions to compel production from nonparties are governed by Civil Rule 45. See Civil Rule 34(c).

Because Stipp[5] is a nonparty, the bankruptcy court could not resort to the enforcement remedies under Civil Rule 37 for noncompliance with a subpoena. Pennwalt, 708 F.2d at 494 n.4 (sanctions under Civil Rule 37 do not apply to nonparty's failure

---

[5] References to Stipp include both Stipp and MSJM.

-12-

to produce documents); <u>Scruggs v. Vance</u>, 2012 WL 423486, at *1 (E.D. Cal. Feb. 8, 2012); <u>In re Nicole Energy Servs., Inc.</u>, 356 B.R. 786; <u>Pereira</u>, 1997 WL 698186, at *5 (nonparty's failure to obey a court order directing their attendance at a Rule 2004 examination cannot subject them to Civil Rule 37 sanctions); <u>In re Consol. Meridian Funds</u>, 2013 WL 1501636, at *10 n.14; <u>In re Sciaba</u>, 334 B.R. at 526. The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a subpoena duces tecum is Civil Rule 45(e), applicable here through Rule 9016. <u>Pennwalt</u>, 708 F.2d at 494 (applying former Civil Rule 45(f) and citing <u>Fisher v. Marubeni Cotton Corp.</u>, 526 F.2d 1338, 1341 (8th Cir. 1975)); <u>In re Exxon Valdez</u>, 142 F.R.D. 380, 385 (D.D.C. 1992) (denying petitioner's request for attorney's fees under Civil Rule 37 for respondent's alleged bad faith in not complying with subpoena and holding that the only sanction available is one for contempt under Civil Rule 45, which did not apply because nonparty timely objected to the subpoena); <u>In re Scruggs</u>, 2012 WL 423486, at *1; <u>In re Nicole Energy Servs., Inc.</u>, 356 B.R. 786; <u>In re Sciaba</u>, 334 B.R. at 526. Hence, the only way CML could seek sanctions against Stipp for noncompliance with the subpoenas was to seek to hold him in contempt of court.[6] However, even this has

---

[6] Arguably, the remedy of attorney's fees under Civil Rule 37(a)(5) may apply to a nonparty's failure <u>to attend a deposition</u> that requires the filing of a motion to compel. However, we disagree that such remedy could apply here. CML's real focus was on obtaining documents from Stipp, and the vast majority of its time was spent engaging in that activity. Further, the Rule 2004 examinations had been continued indefinitely, as no further notices were filed after October 11, 2012. Thus, because Stipp
(continued...)

-13-

its limitations.

Under Civil Rule 45(e), a court may hold in contempt a person who fails "without adequate excuse" to obey a subpoena. A nonparty served with a subpoena has three options: it may (1) comply with the subpoena, (2) serve an objection on the requesting party in accordance with Civil Rule 45(c)(2)(B), or (3) move to quash or modify the subpoena in accordance with Civil Rule 45(c)(3). See In re Consol. Meridian Funds, 2013 WL 1501636, at *10. Here, Stipp timely served Written Objections to the subpoenas in accordance with Civil Rule 45(c)(2)(B).[7] This qualifies as an "adequate excuse." DeGeer v. Gillis, 755 F. Supp. 2d 909, 930 (N.D. Ill. 2010). See also In re Exxon Valdez, 142 F.R.D. at 385. Having raised timely objections to the subpoenas,

---

[6](...continued) was not directed to attend a deposition, he could not have failed to attend one. Finally, as noted above, Rule 7037 applies only in cases of adversary proceedings or contested matters (via Rule 9014), neither of which we have here.

[7] Prior to the amendments in December 2013, Civil Rule 45(c)(2)(B) read as follows:

A person commanded to produce designated materials or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the designated materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Stipp was not required to produce documents, or even search for them, until CML obtained an order directing compliance. <u>Pennwalt</u>, 708 F.2d at 494 & n.5 (although a subpoena itself is a court order and noncompliance may warrant contempt sanctions, once a nonparty objects, the provisions of Civil Rule 45(c) come into play, and the party seeking discovery must obtain a court order directing compliance); <u>DeGeer</u>, 755 F. Supp. 2d at 930 (same).[8]

CML did as Civil Rule 45(c) requires and moved to compel Stipp to produce the documents once he properly objected to the subpoenas. <u>See</u> Civil Rule 45(c)(2)(B)(i). CML also requested sanctions for Stipp's noncompliance. In the Order, the bankruptcy court ordered Stipp to comply with the subpoenas <u>and</u> awarded CML its attorney's fees incurred due to his noncompliance. The awarding of sanctions in this case was erroneous. When a nonparty has objected to a subpoena under Civil Rule 45(c)(2)(B) or even when its objection has been first raised in a motion to quash, a court may not invoke its contempt powers for failure to comply without first issuing an order compelling that compliance. <u>Pennwalt</u>, 708 F.2d at 494; <u>DeGeer</u>, 755 F. Supp. 2d. at 930. Therefore, Stipp's excused noncompliance with the subpoenas could not be deemed a "contempt" under Civil Rule 45(e), and sanctions

_____

[8] Authority exists, however, providing that even though Stipp timely served his Written Objections on CML, because some of his objections were based on attorney-client privilege, that he was to also serve a privilege log "within a reasonable time." <u>DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)</u>, 151 F.3d 75, 81 (2d Cir. 1998); <u>Tuite v. Henry</u>, 98 F.3d 1411, 1416 (D.C. Cir. 1996) (holding that to raise a privilege objection to a subpoena requiring production of documents, a written objection stating the claim of privilege must be made within 14 days after the subpoena is served, but that a privilege log can be served within a reasonable time); <u>Minn. Sch. Bds. Ass'n Ins. Trust v. Emp'rs Ins. Co. of Wausau</u>, 183 F.R.D. 627, 630 (N.D. Ill. 1999).

-15-

were not warranted. The bankruptcy court also could not impose sanctions under its "inherent authority" for abuse of the judicial process, absent a showing and finding of bad faith. <u>Pennwalt</u>, 708 F.2d at 494; <u>In re Exxon Valdez</u>, 142 F.R.D. at 385 (citing <u>Pennwalt</u>). No such showing or finding was made here.

Accordingly, in cases of nonparty subpoenas under Civil Rule 45, the court must first issue an order compelling the nonparty's compliance with the subpoena, and the nonparty must fail to comply with the order before any contempt sanctions can be awarded. Of course, before such sanctions can be awarded, the requesting party must first file a motion for contempt, and the subpoenaed party must be found to be in contempt, which did not occur here.

The remedy under Civil Rule 37(a)(5) of awarding a party its reasonable expenses incurred in bringing a motion to compel before a discovery order is entered was simply not available here; the bankruptcy court abused its discretion when it imposed the sanction against Stipp for CML's attorney's fees.

## VI. CONCLUSION

For the foregoing reasons, we REVERSE the portion of the Order awarding CML $10,000 for its attorney's fees.